UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VINCENT VENTIMIGLIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:08CV1199 CDP |
| ) | |
| ST. LOUIS C.O.G., INC., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

After becoming dissatisfied with the results of their state-court proceedings, plaintiffs brought this federal case against many of the same parties, as well as against the state judges who had ruled on their cases, the lawyers representing the opposing parties in those cases, and others. Plaintiffs have filed numerous motions, including a motion for temporary restraining order, which I denied after a hearing. Defendants have filed motions to dismiss, and I agree that dismissal of this case is appropriate, for the reasons that follow.

### Procedural Background

The Twin Rivers Worship Center[1] obtained a temporary restraining order in state court against plaintiff Vincent Ventimiglia after he allegedly disrupted its church services on September 17, 2006. Following the denial of a writ sought by

---

[1] Defendant St. Louis C.O.G., Inc. does business as the Twin Rivers Worship Center.

Ventimiglia with Missouri's appellate courts, Twin Rivers voluntarily dismissed its action for a restraining order against Ventimiglia.

Ventimiglia filed a lawsuit in St. Louis County Circuit Court against Twin Rivers, its pastor T. Bryan Cutshall, and others, alleging claims of libel, slander, and defamation. On defendants' motion, the court dismissed Ventimiglia's case, without prejudice. Ventimiglia appealed the dismissal, but ultimately voluntarily dismissed his appeal. Ventimiglia filed a second lawsuit against Twin Rivers, the church's attorney Terry Jones, and Cutshall, again in St. Louis County Circuit Court, on February 22, 2008. Defendants moved to dismiss the case, and the motion to dismiss was granted with prejudice in June of 2008. Ventimiglia appealed the dismissal, and that dismissal is currently pending before the Missouri Court of Appeals. Ventimiglia also filed two writs with Missouri's appellate courts in 2008 relating to these lawsuits, both of which were denied.

Ventimiglia and his family filed this federal case in August of 2008, seeking to bring federal and state claims arising out of the same events previously litigated in state courts. In addition to the defendants they had sued in state court, the Ventimiglias have added as additional defendants three state court judges who presided over matters in the state court cases,[2] two attorneys who represented the

---

[2]Defendants Carolyn Whittington, Michael Jamison, and John Kintz.

defendants in state court,[3] and other Twin Rivers officials.[4] The Ventimiglias' claims stem from the September 17, 2006 incident and resulting litigation, and their dissatisfaction with the proceedings in state court.

All served defendants have moved to dismiss the claims against them, and plaintiffs have filed a consolidated opposition to the motions to dismiss.[5] Because the state-court judges have judicial immunity from suit, I must dismiss them from this action. I lack jurisdiction over the remaining federal claims and so will dismiss them for lack of subject-matter jurisdiction. I decline to exercise supplemental jurisdiction over the state-law claims, and so will dismiss them without prejudice.

## Discussion

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of the complaint. The court must assume all factual allegations of the complaint are true and must construe those allegations

---

[3] Defendants Daniel Tobben and Jennine Adamek-Moore.

[4] Defendant David Haynes and unserved defendants Norman McFall and Carl Whitaker.

[5] Two Twin Rivers defendants, Carl Whitaker and Norman McFall, remain unserved in this case. Because plaintiffs' amended complaint alleges the same facts and claims against these unserved defendants that are alleged against the remaining defendants, the Court dismisses the claims asserted against these defendants for the same reasons and on the same basis as stated above.

in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989). "The motion will succeed or fail based upon the allegations contained in the face of the complaint." McAuley v. Federal Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) (internal citations and quotation marks omitted). However, the factual allegations in the complaint must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

Plaintiffs' amended complaint alleges violations of their civil rights under 42 U.S.C. § 1983 and a conspiracy to violate their civil rights under 42 U.S.C. § 1985 (Count I), violations of two federal criminal statutes, 18 U.S.C. §§ 241 and 242 (Count II), violations of their first, fifth, and fourteenth amendment rights under the United States Constitution and Article I, § 14 of the Missouri Constitution (Counts III-VI), and state law tort claims (Counts VII-IX). Plaintiffs seek injunctive and declaratory relief, as well as actual and punitive damages.

Section 1983 provides the mechanism for enforcing rights secured by the Constitution and laws of the United States and does not confer any substantive rights. Gonzaga University v. Doe, 536 U.S. 273, 285 (2002). Construing plaintiffs' pro se amended complaint liberally, plaintiffs assert violations of rights guaranteed by the First, Fifth, and Fourteenth Amendments to the United States

Constitution. These claims may be brought under § 1983. However, § 1983 provides no remedy for any alleged violations of the Missouri Constitution, so Count VI will be dismissed. See Ebmeier v. Stump, 70 F.3d 1012, 1013 (8th Cir. 1995) ("Section 1983 guards and vindicates federal rights alone."). Moreover, plaintiffs cannot maintain a cause of action under § 1983 for alleged violations of federal criminal statutes 18 U.S.C. §§ 241 and 242, so Count II will also be dismissed. See Rockefeller v. U.S. Ct. of Appeals Office, for Tenth Circuit Judges, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (18 U.S.C. § 242 does not confer a private right of action); Frison v. Zebro, 339 F.3d 994, 998-99 (8th Cir. 2003) (well-settled that criminal statutes rarely survive § 1983 analysis because criminal statutes express prohibitions rather than personal entitlements, and nothing short of a right conferred unambiguously conferred by Congress will create a private right of action enforceable under § 1983) (citing Gonzaga University, 536 U.S. at 283).

"Only state actors can be held liable under § 1983." Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001). A private party who willfully engages in joint activity with a state or its agents is considered a state actor. Id. The only state actors named in the amended complaint are the three state court judges, Carolyn Whittington, Michael T. Jamison, and John Kintz, who

presided over Ventimiglia's state court cases.

Plaintiffs' amended complaint alleges that Judge Whittington: failed to act upon Ventimiglia's complaints of alleged misconduct by attorneys and other judges; refused to consider Ventimiglia's petition seeking an order of contempt against attorneys; denied Ventimiglia's request to record a hearing; issued an order which did not reflect Ventimiglia's arguments and objections; ordered the case transferred to Judge Kintz after Ventimiglia moved to disqualify Judge Jamison; and acted without jurisdiction because pending motions were allegedly frivolous or mooted by amended pleadings.[6]

Plaintiffs' amended complaint alleges that Judge Jamison: denied Ventimiglia's motion that a hearing be recorded; was rude to Ventimiglia and allowed him to present only a summary of his argument during a hearing; allowed attorneys to "misrepresent the record" and did not read Ventimiglia's pleadings or listen to his arguments; and signed an order prepared by defense counsel without incorporating Ventimiglia's pleadings, motions, arguments, and proposed orders.

Plaintiffs' amended complaint alleges that Judge Kintz: failed to act on

---

[6]In the motion for temporary restraining order that I denied on November 25, 2008, Ventimiglia added allegations that Judge Whittington, along with other people who were not named as defendants in the complaint, violated his rights by requiring that police officers accompany him when he entered the St. Louis County courthouse, and by otherwise interfering with his access to the courts. (Doc. # 64).

Ventimiglia's complaints of unethical behavior by attorneys; denied or refused to hear Ventimiglia's petition seeking an order of contempt against the attorneys; was rude to Ventimiglia and laughed at him; allowed a bailiff to interrupt Ventimiglia and threaten to remove him from hearings; "shut down" a hearing without allowing plaintiff sufficient time to present his pleadings, motions, and arguments and without ruling on his numerous objections; signed orders from which attorneys had "deleted" references to Ventimiglia and his pleadings; dismissed Ventimiglia's case with prejudice and denied his request for a rehearing.

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994). Judicial immunity is "an immunity from suit, not just from ultimate assessment of damages" and accordingly cannot be "overcome by allegations of bad faith or malice." Mireles v. Waco, 502 U.S. 9, 11 (1991) (Section 1983 suit against judge for allegedly ordering bailiffs to seize attorney and bring him to court was properly dismissed). Judicial immunity extends to judicial actions taken in error, done maliciously, or performed in excess of authority. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) (judicial immunity barred § 1983 suit seeking damages for forced sterilization of mentally disabled minor); Duty v. City of Springdale, Arkansas, 42 F.3d 460, 463 (8th Cir. 1994) (judicial immunity barred § 1983 suit

against municipal judge who issued arrest warrant without jurisdiction); White v. Bloom, 621 F.2d 276, 279-80 (8th Cir. 1980) (judicial immunity barred § 1983 suit against state court judge who allegedly conspired with prosecutor to empanel and all white jury after ordering African-American criminal defendant removed from courtroom even if judge's actions were "taken in error" or "arguendo may even have been done maliciously.").

The only allegations made against the judges relate to how they handled Ventimiglia's state-court cases. Essentially, plaintiffs complain about how the judges held hearings, issued orders, and ruled on motions. These are quintessentially judicial functions, and the judges are absolutely immune from liability for these actions, even considering plaintiffs' allegations of malice. See Mireles, 502 U.S. at 11-12; Forrester v. White, 484 U.S. 219, 227 (1988) (holding that a judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive."). For this reason, the § 1983 and § 1985 claims against the judges must be dismissed.[7] See Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992) (absolute immunity bars conspiracy claims under § 1985).

Even if plaintiffs' amended complaint adequately alleges that the remaining

---

[7]To the extent plaintiffs sue the judges for monetary damages in their official capacities, their § 1983 claims are also barred by the Eleventh Amendment. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

defendants (who are not state actors) should be considered state actors for purposes of imposing § 1983 liability against them – a finding I do not make – plaintiffs' § 1983 claims must be dismissed. The Court lacks jurisdiction to hear these claims under the Rooker-Feldman doctrine, which precludes this court from hearing claims that "in effect constitute[] a challenge to a state court decision." Ballinger v. Culotta, 322 F.3d 546, 549 (8th Cir. 2003).

Federal district courts "exercise original, not appellate, jurisdiction." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005). Only the Supreme Court has jurisdiction to consider the appeal of a state court judgment. 28 U.S.C. § 1257. "If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court." Weekly v. Morrow, 204 F.3d 613, 615 (5th Cir. 2000) (internal citations omitted). Where a losing party in a state court action files a complaint in federal district court alleging injuries caused by an earlier state court judgment, and asks that the "district court review and rejec[t]" the judgment, the Rooker-Feldman doctrine requires that the case be dismissed for lack of subject matter jurisdiction. Exxon Mobil Corp., 544 U.S. at 283-84; see also Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Ct. of Appeals v.

Feldman, 460 U.S. 462 (1983). Stated otherwise:

> A federal district court has jurisdiction over general constitutional challenges if these claims are not inextricably intertwined with the claims asserted in state court. A claim is inextricably intertwined if the federal claim succeeds only to the extent that the state court wrongly decided issues before it. In other words, Rooker-Feldman precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.

Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995). The state and federal claims need not be identical for the Rooker-Feldman doctrine to apply, and the parties to the federal action need not be the same parties in the underlying state action. Lemonds v. St. Louis County, 222 F.3d 488, 493-94 (8th Cir. 2000).

To determine whether the Rooker-Feldman doctrine applies, courts have distinguished between claims "alleging injuries caused by a state court judgment" and those claims "alleging a prior injury that a state court failed to remedy." Skit International, Ltd. v. DAC Technologies of Arkansas, Inc., 487 F.3d 1154, 1157 (8th Cir. 2007) (quoting Exxon Mobil Corp., 544 U.S. at 291). If a plaintiff would have no injury if the state court had not entered the judgment it did, then that plaintiff's federal claim is barred under Rooker-Feldman. Skit, 487 F.3d at 1157. "[E]ven if the state court judgment [is] erroneous" a plaintiff may not seek to have the federal court declare it void, as the judgment is "open to reversal or modification in an appropriate and timely appellate proceeding." Id. (quoting

Rooker, 263 U.S. at 415).

      Here, plaintiffs were the losing parties in a state court proceeding that resulted in a dismissal with prejudice. That judgment is currently on appeal before the Missouri Court of Appeals. Plaintiffs are alleging that the state judges and other defendants violated their constitutional rights in the state court proceeding. The actions of defendants in connection with the prior lawsuit provide the basis for plaintiffs' claims in this case. The federal claims are inextricably intertwined with the adverse judgment in the underlying state action, which is demonstrated by the state-court legal file attached to plaintiffs' amended complaint. Plaintiffs are currently appealing the same conduct and errors at issue here to the Missouri Court of Appeals. As the Supreme Court has recognized, Rooker-Feldman precludes "a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). That is exactly what plaintiffs are attempting to do here. "[F]ederal plaintiffs cannot by artful pleading obtain a hearing of disguised state court appeals that would otherwise be

subject to a Rooker-Feldman bar." Lemonds, 222 F.3d at 494.[8]

The Rooker-Feldman doctrine also deprives this Court of jurisdiction over plaintiffs' claims that defendants' actions in the state court proceeding amounted to a civil conspiracy in violation of § 1985 for the same reasons stated above. Even if it did not, plaintiffs' amended complaint fails to state a claim for a civil conspiracy under § 1985.[9] The "purpose" element of § 1985(2) and (3) requires that plaintiffs prove some racial, or perhaps otherwise class-based "invidiously discriminatory animus." United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 834 (1983); City of Omaha Employees Betterment Assoc. v. City of Omaha

---

[8]Moreover, to the extent that the state case remains pending before the Missouri Court of Appeals, abstention from exercising jurisdiction is proper under the principles announced in Younger v. Harris, 401 U.S. 37 (1971). "Younger abstention is appropriate when (1) the federal action would disrupt an ongoing judicial proceeding (2) which implicates important state interests and (3) which provides an adequate opportunity to raise constitutional challenges." Cormack v. Settle-Beshears, 474 F.3d 528, 532 (8th Cir. 2007). Here, the state case is ongoing; the state proceedings, and especially how those proceedings are conducted, certainly implicate important state interests; and the proceedings before the Missouri Court of Appeals would provide an adequate opportunity for plaintiffs to raise federal challenges, as state courts may review constitutional claims.

[9]The elements of a claim under 42 U.S.C. § 1985(2) are that: 1)defendants conspired; 2) for purposes of impeding, hindering, obstructing, or defeating in any manner the due course of justice; 3) with intent to deny a citizen of the equal protection of the law or injure him for lawfully enforcing, or attempting to enforce, the right of any person to the equal protection of the law. 42 U.S.C. § 1985(2). To establish the existence of a conspiracy under 42 U.S.C. § 1985(3), plaintiffs must prove that the defendants did 1) conspire . . . 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . that one or more of the conspirators 3) did, or caused to be done any act in furtherance of the object of the conspiracy whereby another was 4a) injured in his person or property or 4b) deprived of having and exercising any right or privilege or a citizen of the United States. 42 U.S.C. § 1985(3).

AFSCME, Local 251, 883 F.2d 650, 652 (8th Cir. 1989); Lewellen v. Raff, 843 F.2d 1104, 1116-17 n.16 (8th Cir. 1988). "Additionally, to succeed on a civil rights conspiracy claim, the plaintiff must demonstrate discriminatory purpose in that the defendants selected the particular course of action 'because of' not merely 'in spite of' its adverse effects upon an identifiable group." Andrews v. Fowler, 98 F.3d 1069, 1079-80 (8th Cir. 1996) (internal quotation marks and citations omitted).[10]

Plaintiffs' amended complaint makes no allegations of class-based discriminatory animus and therefore fails to state a claim under § 1985. However, plaintiffs' proposed second amended complaint does contain a section entitled "Plaintiff, Mr. Ventimiglia's Invidious Discriminatory Animus Class." I have reviewed this proposed pleading to determine whether amendment would cure the deficiencies in plaintiffs' § 1985 claims and conclude that it does not. Ventimiglia[11] claims that he is being discriminated against because of his membership in the class of "being a prior convicted felon of many years ago" and

---

[10] With regard to plaintiffs' § 1985(2) claim, the Court further notes that merely being the losing party in state court actions is not a sufficient basis from which to infer obstruction of justice.

[11] The proposed second amended complaint alleges only that Vincent Ventimiglia is part of the "class" of "prior convicted felons;" it makes no similar allegations regarding the other plaintiffs, so even if this allegation were somehow sufficient to demonstrate invidious discrimination – which it is not – it would still not state claims for the other plaintiffs.

being "pro se." These allegations do not demonstrate that defendants engaged in the type of *invidious* discrimination at which § 1985 is directed, where "[t]he ultimate test, of course, is whether the classification is sufficiently invidious so a to fall within the statute's ambit." Shortbull v. Looking Elk, 677 F.2d 645, 649 (8th Cir. 1982). "Neither prisoners nor indigents are suspect classes." Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3rd Cir. 2001); see also Farese v. Scherer, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003); Rose v. Leaver, 35 Fed. Appx. 191, 193 (6th Cir. 2002).[12] Moreover, although plaintiffs' amended complaint is replete with allegations of personal animus between plaintiffs and the defendants, these allegations by themselves are irrelevant and unhelpful to their § 1985 claims. Id. at 649 (stating that "Shortbull's allegation that appellees discriminated against him because of his individual political opposition to them is not actionable under § 1985(c)"). For these reasons, plaintiffs fail to state § 1985 claims.

Without addressing the adequacy of plaintiffs' state law claims, the Court declines to exercise jurisdiction over them. Generally, this Court only has jurisdiction to adjudicate claims based on either federal subject matter jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331 & 1332. However, a "federal court

---

[12]Ventimiglia's assertion of his status as a prior convicted felon as opposed to a current prisoner does not alter the analysis or allege the type of invidious discrimination at which § 1985 is directed.

has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them all in one place." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349 (1988); see also 28 U.S.C. § 1367. Upon a determination that plaintiffs' federal claims fail to state a claim, the Court has discretion to dismiss without prejudice plaintiffs' attendant state law claims. See Miner v. Local 373, 513 F.3d 854, 866 (8th Cir. 2008). The Court, in its discretion, dismisses plaintiffs' state law claims without prejudice.

Plaintiffs have moved to amend their complaint again. Although leave to amend should be freely granted, amendment may be denied when futile. See Hammer v. City of Osage Beach, Missouri, 318 F.3d 832, 844 (8th Cir. 2003). In this case, I will deny plaintiffs' proposed second amended complaint as futile because it does not correct the deficiencies of the amended complaint.

Finally, I have reviewed plaintiffs' second motion to disqualify me from presiding over this case, as well as the supplement to the motion. The supplement accuses me of "being a murderer to babies," (Doc. # 102 at 3) "anti Christ," (Doc. # 102 at 4) "anti bible," (Doc. # 102 at 1), "evil, by biblical definition," (Doc. # 102 at 3), and says, of me, "she intends only evil to her Spirtual enemies, the

Ventimiglias" (Doc. # 102 at 4). The Ventimiglias call themselves "ambassadors from heaven, via, Jesus Christ, and the bible." (Doc. # 102 at 4). Plaintiffs apparently believe that if their allegations are scandalous enough, I will be required to recuse myself. This is simply not the law, and is an inappropriate attempt to judge-shop. Cf. United States v. Dehghani, 2008 WL 5273966 (8th Cir. December 22, 2008) (slip op.) (judge not required to recuse even though defendant made threat against him). Because the second motion and accompanying materials present no valid basis for disqualification, I will deny the motion for the reasons stated in my prior Memorandum and Order denying disqualification dated December 10, 2008. I am also denying plaintiffs' motion to correct the transcript of the November 25, 2008 hearing on plaintiffs' motion for temporary restraining order. The transcript accurately reflects what Mr. Ventimiglia said during the hearing,[13] and his request to have the court reporter investigated by the Attorney General is baseless. All remaining pending motions are denied as moot because this case is dismissed. A separate Order of Dismissal in accordance with this

---

[13] Ventimiglia responded "Yes, ma'am" after I stated that "I don't have jurisdiction to just act like I'm the Missouri Court of Appeals and tell a Missouri Circuit Judge what to do. I know you understand that because you've had so many cases. You're a very experienced litigator, right?" (Doc. # 89 at 17). Ventimiglia argues that this Court is attempting to "elevate them to a heightened level of legal expertise." The Court certainly does not believe that Ventimiglia has acquired any "heightened level of legal expertise" by virtue of the numerous lawsuits (ten) he has filed in this court, but the fact remains that Ventimiglia is an experienced litigator, albeit a pro se one.

Memorandum and Order is entered this same date.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions to dismiss [#30, #32, #40, #46, #51, #60] are granted in part and denied in part consistent with this Memorandum and Order, and Counts I-VI of plaintiffs' amended complaint are dismissed, with prejudice. Counts VII-IX of plaintiffs' amended complaint are dismissed without prejudice.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file second amended complaint [#39] is denied, and their motion to supplement record [#91] is granted.

**IT IS FURTHER ORDERED** that plaintiffs' second motion for disqualification [#95] and their motion to correct transcripts [#99] are denied.

**IT IS FURTHER ORDERED** that all remaining pending motions are denied without prejudice as moot.

                                        */s/ Catherine D. Perry*
                                      CATHERINE D. PERRY
                                      UNITED STATES DISTRICT JUDGE

Dated this 5th day of January, 2009.